Douglas R. Pahl, OSB No. 950476
DPahl@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Telephone: 503.727.2000
Facsimile: 503.727.2222

Attorneys for Interested Party
Cal-Am Properties, Inc.

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>Danielle Lee Wait<br><br>Debtor. | Case No. 15-33254-rld7<br><br>STATEMENT OF INTERESTED PARTY CAL-AM PROPERTIES, INC. IN SUPPORT OF TRUSTEE'S MOTION AND NOTICE OF INTENT TO SETTLE AND COMPROMISE AND IN OPPOSITION TO DEBTOR'S MOTION TO CONVERT TO CHAPTER 13 |

Interested party Cal-Am Properties ("Cal-Am), by its counsel, submits this statement in support of the Trustee's Motion and Notice of Intent to Settle and Compromise (the "Settlement Notice") (ECF No. 42) and in support of the Trustee's opposition to Debtor's Motion to Convert to Chapter 13 (the "Conversion Motion") (ECF No. 45), and states as follows:

**<u>INTRODUCTION</u>**

Cal-Am, as a party to the settlement (the "Settlement") proposed by the chapter 7 trustee (the "Trustee") and as a likely creditor of Debtor if her Conversion Motion is granted, submits this statement in order to provide the Court with a more complete picture of the issues arising out of the Settlement Notice and Debtor's Conversion Motion.

PAGE 1- STATEMENT OF INTERESTED PARTY
CAL-AM PROPERTIES, INC.

LEGAL131644433.4

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Case 15-33254-rld7    Doc 54    Filed 07/15/16

Contrary to the picture painted by Debtor in her Objection to the Settlement Notice, and as recognized by the Trustee, the four factors set forth *A&C Properties* for approving settlements weigh decidedly in favor of approving the Settlement. As discussed below, Debtor's underlying BOLI claims are unlikely to be successful or to result in a recovery sufficient to satisfy all of the creditors' interests in the estate. Further, any award that Debtor may theoretically receive in the administrative forum will likely be unavailable for distribution to Debtor's creditors for years from now due to the complex legal and factual issues that will need to be reviewed on appeal (if an award to Debtor is made). Finally, under the *A&C Properties* factors, the creditors' interests are "paramount" and Debtors' creditors will receive full and immediate payment under Settlement Notice.

Debtor's Conversion Motion appears to be nothing more than an eleventh hour attempt to play keep-away with this asset. This is not the first time Debtor has attempted to keep her creditors from benefitting from the asset. For the first several months of this chapter 7 proceedings, Debtor improperly claimed that her BOLI Claims were exempt under Section 522(d)(11)(D) on the grounds that they constitute claims of "personal bodily injury," which they plainly do not.[1] In any event, the effect of Debtor's belated Conversion Motion is to force her creditors to forego immediate payment in full and instead unwillingly participate in Debtor's litigation gamble. As stated by the Trustee, the Conversion Motion lacks any logical basis and puts Debtor's creditors' full recoveries at risk in a way that suggests the absence of good faith and abuse of process.

Debtor should not be permitted to overrule the business judgment of the Trustee and gamble with her creditors' imminent full recoveries. If the Court approves the Settlement, all filed claims will be paid in full, with interest, leaving Debtor with a surplus. Debtor's attempt to

---

[1] The Trustee repeatedly and successfully opposed Debtor's claimed exemption and obtained an order striking the exemption [ECF #19], although the Court ultimately abated the order pending resolution of the BOLI Claims. [ECF #36].

PAGE 2- STATEMENT OF INTERESTED PARTY
CAL-AM PROPERTIES, INC.

LEGAL131644433.4

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Case 15-33254-rld7    Doc 54    Filed 07/15/16

derail the Settlement and convert the case to chapter 13, only creates a situation where her creditors' interests are treated as secondary, not "paramount" as required under the *A&C Properties* factors.

The Court should approve the Settlement, overrule Debtor's objection, and permit the estate's creditors and the Trustee to be paid in full. Once the Settlement is approved and consummated, the Conversion Motion can be granted or denied as moot.

## BACKGROUND

**A.    Facts Relevant To Underlying Claim That Trustee Seeks To Settle**

1. Debtor and her partner, Amy Tuttle ("Tuttle"), are tenants at Springbrook Estates, a mobile home residential property (the "Property") in Newberg, Oregon, managed by Cal-Am.

2. In or around November of 2010, Debtor's partner, Amy Tuttle ("Tuttle") moved into Debtor's residence at the Property. Eighteen months later, in May of 2012, Cal-Am received a "petition" signed by Debtor, the Kangisers and eight other residents of the Property complaining about Lance and Michelle MacLean and requesting they be evicted. Nowhere did the petition or in complaints concurrently submitted by Debtor and the Kangisers indicate any discriminatory harassment was occurring. Rather the petition and complaints seemed to center on disputes between the MacLeans and Kangisers, with only marginal mention of Debtor in relation to her allowing her dogs to bark late into the night.

3. In response to this apparent neighborhood feud, Cal-Am instructed its attorney, Jeffrey Bennett, to send a letter to all of the instigating parties, which it identified as the Kangisers, MacLeans and Debtor and her partner. All three couples received identical letters, dated May 31, 2012, instructing them to cease all conduct that would violate their lease agreements or they would face eviction proceedings.

4. In August 2012, Cal-Am, through Mr. Bennett, received correspondence from the Fair Housing Counsel of Oregon ("FHCO"), a housing advocacy group, on behalf of Debtor

PAGE   3-   STATEMENT OF INTERESTED PARTY
CAL-AM PROPERTIES, INC.

LEGAL131644433.4

Perkins Coie LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Case 15-33254-rld7    Doc 54    Filed 07/15/16

alleging that Debtor and her partner had been subjected to sexual orientation harassment by the MacLeans since early 2011, shortly after Tuttle moved into Debtor's residence. Mr. Bennett and Cal-Am investigated the new allegations made by FHCO but could not corroborate Debtor's claim of harassment. Mr. Bennett informed FHCO that, based on Cal-Am's inconclusive investigation, it could not obtain a forcible eviction of the MacLeans. Mr. Bennett also explained that evicting the MacLeans from the Property would be particularly difficult because the MacLeans owned their own home and only leased land from Cal-Am. Nevertheless, in January of 2013, Mr. Bennett offered to and did, in fact, work with FHCO to draft and ultimately send a letter to the MacLeans demanding they cease any harassing conduct that may have been occurring.

5. Debtor and her partner intermittently continued to complain of harassment by the MacLeans, although Debtor and her partner never provided any proof or evidence to corroborate their complaints.

6. Cal-Am was never able to substantiate any of the alleged harassing conduct.

7. On December 30, 2013, Debtor, her partner, and FHCO filed administrative charges of housing discrimination against Cal-Am with the Oregon Bureau of Labor and Industries ("BOLI"). BOLI conducted a cursory investigation of Debtor's claims and made a finding that "substantial evidence" supported Debtor's allegations. BOLI made this determination in spite of the fact that it had not interviewed the MacLeans or the Cal-Am employees who managed the Property during the time when Debtor alleged most of the harassing conduct had occurred.

8. On August 25, 2015, BOLI initiated Formal Charges on behalf of Danielle Wait (the "Debtor"), Tuttle, and the Fair Housing Council of Oregon (Case Nos. 30-15, 31-15, and 32-15) (the "Litigation"), alleging claims of housing discrimination against Cal-Am on the basis

PAGE 4- STATEMENT OF INTERESTED PARTY
CAL-AM PROPERTIES, INC.

LEGAL131644433.4

Perkins Coie LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Case 15-33254-rld7    Doc 54    Filed 07/15/16

of sexual orientation (the "BOLI Claims"). Debtor and her counsel failed to disclose that she no longer owned the BOLI Claims because they were now part of her bankruptcy estate.

9. On September 15, Cal-Am exercised its statutory right to elect to have the Formal Charges be heard in circuit court, as opposed to BOLI itself. Administrative Law Judge Furnanz, BOLI's ALJ assigned to hear this case, issued *sua sponte* Orders denying Cal-Am's election on timeliness grounds. Cal-Am has challenged these Orders, both in the agency proceedings and in a separate Petition for Judicial Review that is currently on appeal with the Oregon Court of Appeals.

10. The factual allegations in the Formal Charges do <u>not</u> allege that Cal-Am itself engaged in any discriminatory conduct against Debtor. Instead, Debtor alleges that her former neighbors, the MacLeans, harassed her and her partner on the basis of their sexual orientation and Debtor seeks to hold Cal-Am liable for the acts of these third-party non-agent tenants on the grounds that Cal-Am knew of the harassment but negligently did nothing. Cal-Am denies these allegations in their entirety.

11. Cal-Am moved for summary judgment on the BOLI Claims, but its motion was denied by ALJ. The legal issues raised in its motion are complex and substantial. Cal-Am provides the parties' summary judgment briefing, along the ALJ's ruling, as Exhibits 1-6 to the Declaration of Douglas R. Pahl in Support of Statement of Interested Party Cal-Am (the "Pahl Decl."), filed concurrently with this Statement to assist the Court in applying the *A&C Property* factors and in evaluating the likelihood of Debtor securing a more favorable result for her creditors than would be available through the Settlement.

**B.     Facts Relevant To Debtor's Chapter 7 Bankruptcy Filing**

12. On July 2, 2015, Debtor filed a petition under chapter 7 of the Bankruptcy Code.

13. Rudolfo A. Camacho was appointed as the chapter 7 trustee (the "Trustee").

PAGE   5-   STATEMENT OF INTERESTED PARTY
CAL-AM PROPERTIES, INC.

LEGAL131644433.4

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Case 15-33254-rld7    Doc 54    Filed 07/15/16

14. On July 16, 2015, in her Schedule C filing, Debtor claimed the BOLI Claims were exempt from property being administered by the Trustee pursuant to Section 522(d)(11)(A) (an award under a crime victim reparation law) and Section 522(d)(11)(D) (a payment, not to exceed $22,975, on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent"). [ECF #8].

15. The Trustee objected to Debtor's improper attempt to exempt the BOLI Claims. Specifically, the Trustee argued the exemption provided by Section 522(d)(11)(D) has no application to the BOLI Claims. [ECF #13, #18].

16. In its Formal Charges, filed on August 25, 2015, BOLI made no assertions that Debtor had suffered any personal bodily injury.

17. In her bankruptcy proceedings, Debtor claimed that her BOLI Claims were exempt under Section 522(d)(11)(D). Debtor made this claim even though the Formal Charges filed on her behalf by BOLI made no factual assertion that Debtor had experienced bodily injury or had claims related to crime victim reparations statutes.

18. The Trustee objected to Debtor's factually baseless claim of exemption and, on September 8, 2015, the Court entered an order affirming the Trustee's objection. [ECF #19].

19. On November 5, 2015, Debtor filed an amended Schedule C, continuing to assert the exemption but listing the value of the exemption at $22,975 and $145. [ECF #34].

20. On November 20, 2015, following a hearing, the Court entered an order abating the Trustee's objections to the claimed exemptions until further order of the Court. [ECF #36].

21. On January 25, 2016, Debtor filed her own "Petition In Intervention" in the BOLI Litigation. Debtor and her counsel again failed to disclose that Debtor had filed for bankruptcy on July 2, 2015 and that Debtor's claims were owned by the Trustee. In addition, Debtor's

PAGE 6- STATEMENT OF INTERESTED PARTY
CAL-AM PROPERTIES, INC.

LEGAL131644433.4

Perkins Coie LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Case 15-33254-rld7    Doc 54    Filed 07/15/16

Petition made no factual assertion that she had experienced bodily injury or had claims related to crime victim reparations statutes.

22. On May 4, 2016, the Trustee moved to employ Matthew Ellis, who had been serving as Debtor's legal counsel in the Litigation. [ECF #38]. The employment was approved.

23. From and after May 5, 2016, the Trustee and Cal-Am negotiated the settlement of the BOLI Claims. Those negotiations culminated in the settlement reflected in the Trustee's Settlement Notice filed on May 25, 2016. [ECF #42]. The proposed Settlement is sufficient to pay all filed claims and all administrative claims in full, with interest, leaving a surplus for Debtor.

**C.  Facts Relevant To Debtor's Conversion Motion**

24. In late April of 2016, while preparing to litigate the BOLI Claims, Cal-Am discovered that Debtor had filed for Bankruptcy almost ten months before. Debtor, who had been litigating the BOLI Claims up until this point, had informed neither Cal-Am nor the BOLI ALJ of her status as a bankruptcy debtor or her scheduling of the BOLI claims in her bankruptcy proceedings. This lack of notice to Cal-Am was particularly surprising in light of the landlord-tenant relationship that exists between Cal-Am and Debtor.

25. On or about June 10, 2016, Cal-Am issued notice to Debtor of her fourth rent delinquency within the prior twelve months. On June 30, 2016, Debtor paid the past-due rent.

26. On or about July 8, 2016, Cal-Am issued notice to Debtor of her fifth rent delinquency within the prior twelve months. Debtor has yet to pay the past-due rent on this fifth delinquency.

## ARGUMENT

**The Settlement Is In The Best Interests Of The Creditors And Should Be Approved**

The Trustee, pursuant to Section 704, has the authority and obligation to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as

PAGE  7-  STATEMENT OF INTERESTED PARTY
        CAL-AM PROPERTIES, INC.

LEGAL131644433.4

Perkins Coie LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Case 15-33254-rld7    Doc 54    Filed 07/15/16

expeditiously as is compatible with the best interests of parties in interest." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 352, 105 S.Ct. 1986, 1992 (1985) ("The trustee is accountable for all property received ... and has the duty to maximize the value of the estate ...."); *see also In re Rigden*, 795 F.2d 727, 730 (9th Cir.1986).

In discharge of these duties, the Trustee has assessed the BOLI Claims, negotiated a settlement of those Claims, and, in the exercise of his business judgment, determined that settlement of the BOLI Claims for $50,000 would be fair and reasonable and in the best interests of the estate and its creditors. *In re: James Bertram Morris*, 2016 WL 1254357 (9th Cir. BAP 2016) ("The Trustee, having considered both [debtor's] position and [defendant's] position, exercised his business judgment in determining that settling with [defendant] was in the best interest of the estate. He had no duty to advocate for [debtor]; rather, it was [debtor's] counsel's job to convince the court of his client's position").

Based on his assessment and business judgment, the Trustee has asked this Court to confirm his determination and approve the settlement. Debtor has objected, arguing that the settlement is not fair. Debtor is wrong.

"In determining the fairness, reasonableness and adequacy of a proposed settlement agreement, the court must consider: (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." *Martin v. Kane (In re A&C Properties)*, 784 F.2d 1377, 1381 (9th Cir.1986). "[C]ompromises are favored in bankruptcy, and the decision of the bankruptcy judge to approve or disapprove the compromise of the parties rests in the sound discretion of the bankruptcy judge." *In re Sassalos*, 160 B.R. 646, 653 (D.Or.1993). To approve a settlement agreement, the Court is required merely to "canvass the issues and see whether the settlement 'falls below the

PAGE 8- STATEMENT OF INTERESTED PARTY
CAL-AM PROPERTIES, INC.

LEGAL131644433.4

**Perkins Coie** LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Case 15-33254-rld7    Doc 54    Filed 07/15/16

lowest point in the range of reasonableness.' " *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir.1983).

The proposed settlement in this case is significantly above "the lowest point in the range of reasonableness." Indeed, the proposed settlement in this case is fair and reasonable, is in the best interests of the estate and its creditors and each of the four *A&C Properties* factors weighs in favor of approving the settlement as discussed below.

**Probability Of Success On Debtor's Underlying BOLI Claims**

The probability of Debtor succeeding on her underlying BOLI Claims, both with respect to liability and a recovery that would fully reimburse creditors, is highly questionable.

As an initial matter, Cal-Am has challenged BOLI's exercise of jurisdiction over the BOLI Claims themselves as legally unfounded and unconstitutional. Specifically, in fair housing discrimination cases such as the kind asserted by Debtor against Cal-Am, a respondent has the right to elect to be heard in circuit court rather than in agency proceedings. Cal-Am asserts that it timely elected to be heard in circuit court, but the ALJ ruled otherwise. Cal-Am asserts that the ALJ's ruling has deprived it of its statutory right to be heard in court, and Cal-Am is currently contesting BOLI's denial of its election right through a separate action for judicial review that is currently on appeal to the Oregon Court of Appeals.[2] Cal-Am has also raised and preserved this issue within the current Litigation. If Cal-Am prevails on this jurisdictional issue, any recovery that Debtor may win in the Litigation will likely be reversed.

Another significant legal challenge facing Debtor's claims is the legal invalidity of the administrative regulation under which BOLI seeks to hold Cal-Am liable. In a motion for summary judgment, Cal-Am challenged the pertinent BOLI regulation on grounds that the

---

[2] For the Court's reference, this matter was filed in Yamhill County Circuit Court, Case No. 15CV28913 and is pending in the Oregon Court of Appeals, Case No. CA A161405. Cal-Am will supply the appellate briefing upon the Court's request and/or will make it available for the evidentiary record.

PAGE 9- STATEMENT OF INTERESTED PARTY
CAL-AM PROPERTIES, INC.

LEGAL131644433.4

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Case 15-33254-rld7    Doc 54    Filed 07/15/16

regulation reaches far beyond BOLI's statutory authority by attempting to hold a landlord liable for the acts of a third-party non-agent tenant. In her Objection to the Settlement, Debtor correctly points out that the ALJ denied Cal-Am's motion for summary judgment. Debtor neglects to note, however, that the ALJ's decision was extremely cursory in nature and failed to address any of the controlling points of law cited by Cal-Am and argued extensively by the parties. The ALJ's cursory treatment of such significant legal issues suggests, at the very least, that Debtor will receive no recovery until appeals are concluded and, more likely, that Debtor will never recover on her claims after Cal-Am is successful on appeal.

Similarly, the factual issues at the administrative hearing will be hotly contested and Cal-Am is confident that the evidence it will present will show that Debtor's allegations lack merit.

Even if she gets past the significant jurisdictional and liability hurdles, Debtor's demand for $200,000 in non-economic emotional distress damages is excessive, particularly in the absence of any allegation that Debtor sought or received mental health treatment for her alleged distress.

After canvassing the BOLI Claims, and presumably with the benefit of advice from the counsel who had represented Debtor in the BOLI proceedings up until his appointment as Trustee's counsel, the Trustee concluded that the Settlement falls within "the range of reasonableness," and recommended its approval. *Cosoff*, 699 F.2d at 608. After an objective view of the legal and factual challenges facing Debtor's claims, this factor weighs decidedly in favor of approving the Settlement.

**Difficulties To Be Encountered In The Matter of Collection**

This factor, while in some respects neutral, also supports the Settlement. Although Cal-Am is solvent and there would likely be no difficulty collecting any judgment from it, the Court should consider the delays discussed below that will attend the conclusion of the hearing and, if necessary, the disposition of any appeal.

PAGE 10- STATEMENT OF INTERESTED PARTY
CAL-AM PROPERTIES, INC.

LEGAL131644433.4

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Case 15-33254-rld7 Doc 54 Filed 07/15/16

**Complexity Of The Litigation And The Expense, Inconvenience, And Delay Necessarily Attending It**

In her Objection, Debtor asserts that "[a]ll that is left to do is try the case." Debtor's assertion may be wishful, but it is not accurate.

In fact, absent approval of the Settlement, the BOLI Claims will be litigated through the administrative hearing. It is not unusual for post-hearing issues to arise, and any such issues will need to be addressed. If the history of the underlying proceedings is any guide, there will likely be substantial post-hearing issues to address.

Further, if Debtor ultimately prevails at the administrative hearing, Cal-Am will pursue available appeals arising from errors committed within the administrative process, just as it will continue to prosecute its pending appeal over BOLI's jurisdiction. Those appeals may take years to complete. Of course, if Cal-Am prevails either at the administrative hearing or on any of its appeals, Debtor will achieve no recovery.

Thus, contrary to her assertion, much more is left to do than simply try this case. Instead, a realistic picture of this case is that Debtor's BOLI claims present complicated legal and factual issues that may take years to untangle. Based on these circumstances, this factor weighs heavily in favor of the Trustee's decision to approve the Settlement in order to give Debtor's creditors a complete and immediate payment of their claims.

**Paramount Interests of Creditors**

This "paramount interest" factor weighs decidedly in favor of approving the Settlement. Debtor's creditors received proper notice of the Trustee's Settlement Notice pursuant to Bankruptcy Rule 2002(a)(3), and none of them have objected to approval of the Settlement. And why would they? The Settlement proposes to pay them in full in cash immediately. Why would a creditor walk away from payment in full now to join Debtor in her litigation gamble with the unlikely best case scenario being the exact same payment years down the road?

PAGE 11- STATEMENT OF INTERESTED PARTY
CAL-AM PROPERTIES, INC.

LEGAL131644433.4

Perkins Coie LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Case 15-33254-rld7    Doc 54    Filed 07/15/16

Debtor attempts to blur the effect of her legal maneuvering on her creditors by pledging to pay her creditors in full in chapter 13. Debtor's assurances ring hollow, however, in that her plan would likely be conditioned upon success in the Litigation, which is by no means certain. Moreover, Debtor's inability to meet her other financial commitments calls into question her ability to make good on her assurance that she will pay her creditors in full in chapter 13. The Trustee appears to understand these points, and he has come to the logically inescapable conclusion that the creditors' paramount interest necessitates acceptance of the Settlement here.

The interests of creditors will not be served by allowing Debtor to play roulette with her creditors' money. The *A&C Properties* case instructs that the interests of creditors are *paramount.* If so, the Court should approve the Settlement.

**The Trustee Has Sufficient Knowledge To Settle The BOLI Claims**

Debtor seeks to derail the Trustee's acceptance of the Settlement by arguing that the Trustee had insufficient knowledge and justification for settling the BOLI Claims. Debtor's argument misses the mark on multiple grounds.

First, assessment of the Trustee's knowledge of an underlying litigation is not one of the *A&C Properties* factors that the Court must consider when evaluating a settlement for approval. The question is whether this Court finds the factors have been met based on the record.

Second, Debtor overstates the depth of the review required by the Trustee and, more importantly, this Court, necessary to proceed with the Settlement. "'When assessing a compromise, courts need not rule upon disputed facts and questions of law, but only canvass the issues.' If the court were required to do more than canvass the issue, 'there would be no point in compromising; the parties might as well go ahead and try the case.'" *Suter v. Goedert*, 396 B.R. 535, 548 (D.NV. 2008) (citations omitted).

Finally, Debtor is mistaken about the level of the Trustee's knowledge. In fact, the Trustee retained and is now represented by Matthew Ellis. Mr. Ellis is intimately familiar with

PAGE 12- STATEMENT OF INTERESTED PARTY
CAL-AM PROPERTIES, INC.

LEGAL131644433.4

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Case 15-33254-rld7 Doc 54 Filed 07/15/16

the details of the BOLI Claims, including the legal and factual issues involved, because up until his appointment by the Trustee, he was Debtor's individual counsel in the BOLI proceedings. The Trustee has recommended Settlement with the benefit of having retained Mr. Ellis and all of the knowledge that Mr. Ellis possesses.

**Debtor Is Not Entitled To Conversion**

Section 706(a) of the Bankruptcy Code provides that a chapter 7 debtor may convert a case to one under chapter 13. However, the right to convert is not absolute. *Marrama v. Citizens Bank of Mass*., 549 U.S. 365, 372–73 (2007). In the event that a debtor's motion to convert is contested, courts must engage in "some examination of the facts," *In re Pakuris*, 262 B.R. 330, 335 (Bankr. E.D. Pa. 2001), and review the totality of the circumstances to determine whether conversion would constitute an abuse of process or would otherwise prejudice creditors or other parties. *In re Marcakis*, 254 B.R. 77, 82 (Bankr. E.D.N.Y. 2000). Conversion from chapter 7 to 13 may be denied where there is subjective bad faith, where conversion would be objectively futile or result in an abuse of process, or where there exists some other gross inequity. *See, e.g., In re Cabral*, 285 B.R. 563, (B.A.P. 1st Cir. 2002).

Here, a review of the totality of the circumstances demonstrates that the Debtor's Conversion Motion is a further attempt to improperly manipulate the bankruptcy system to the detriment of her creditors and should be denied.

**Debtor is Attempting to Prevent the Trustee From Liquidating Assets for Creditors**

Courts have denied conversion where a debtor misled the court, manipulated the bankruptcy process or was motivated to prevent a trustee from liquidating assets of an estate for the benefit of creditors. *See, e.g., In re Marrama*, 313 B.R. 525 (1st Cir. 2005) (aff'd 549 U.S. 365); *Marrama,* 549 U.S. at 375 ("the broad authority granted to bankruptcy judges to take any action that is necessary or appropriate 'to prevent an abuse of process' described in § 105(a) of the Code [is] adequate to authorize an immediate denial of a motion to convert filed under § 706

PAGE 13- STATEMENT OF INTERESTED PARTY
CAL-AM PROPERTIES, INC.

LEGAL131644433.4

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Case 15-33254-rld7    Doc 54    Filed 07/15/16

in lieu of a conversion order that merely postpones the allowance of equivalent relief and may provide a debtor with an opportunity to take action prejudicial to creditors."); *In re Wampler*, 302 B.R. 601 (Bankr. S.D. Ind. 2003). "The [conversion] statute was intended to give only the *honest* debtor an opportunity to voluntarily repay his debts via conversion from Chapter 7. Section 706(a) was not intended as a way for the dishonest debtor to abuse the bankruptcy process, perpetrate a fraud or engage in bad faith behavior." *In re Wampler*, at 605. In *In re Wampler*, the debtor received a recovery on a class action claim. Shortly thereafter, the debtor received a turnover request from the trustee, and then immediately moved to convert her case. *Id*. at 605-606. The court denied conversion, holding that the timing, along with the debtor's prior suspect representations relating to the value of the anticipated award, was enough to establish her bad faith attempt to deprive her creditors of their due. *Id*.

Here, as the Trustee recognized, the Debtor attempts a similar maneuver. [ECF #46] at p. 2 ("it appears illogical as to why Debtor would choose to convert at this stage, other than to potentially dilute the creditors' distribution in bad faith, by receiving the settlement funds, wasting the asset, and then reconverting to a Chapter 7"). The Trustee has retained counsel, has reviewed the merits of the case and has negotiated a settlement under which Debtor's creditors get paid immediately and in full. The Trustee is prepared to liquidate the asset. More than 11 months after filing for Bankruptcy under chapter 7, and immediately after the Trustee issued the Settlement Notice recommending the Settlement for approval, Debtor objects and attempts to convert. This timing, almost identical to that *In re Wampler*, should be rejected on the same basis.

Also similar to the debtor *In re Wampler*, this Debtor has demonstrated a history of attempting to improperly describe her underlying claim as exempt in an attempt to deprive her creditors of their due. As noted above, Debtor attempted to exempt her BOLI Claims as claims for bodily injury and crime victim reparations under Section 522(d)(11)(D) even though she has

PAGE 14- STATEMENT OF INTERESTED PARTY
CAL-AM PROPERTIES, INC.

LEGAL131644433.4

**Perkins Coie** LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Case 15-33254-rld7 Doc 54 Filed 07/15/16

no good faith factual basis for seeking these exemptions. This cannot be viewed as the accidental blunder of a pro-se litigant; rather, Debtor was represented by bankruptcy counsel in her chapter 7 filings, and Mr. Ellis in her BOLI filings, and her actions therefore bespeak a calculated attempt to avoid her obligations to her creditors and to the Trustee.

Debtor's improper exemption efforts should be viewed alongside her failure to inform the BOLI tribunal for over ten months that she had filed bankruptcy. Debtor and her counsel never informed Cal-Am or the ALJ of her bankruptcy filing, nor does it appear that she obtained authorization from the Trustee to pursue the BOLI claims for that entire period. Debtor's bankruptcy filing only came to light when Cal-Am's trial preparations uncovered her bankruptcy filing on the eve of the originally scheduled trial date.

Finally, Debtor's attempt to manipulate the bankruptcy process and her obligations to her creditors may be seen in her threadbare allegation that she will pay her creditors "in full in a Chapter 13 plan." [ECF #48] at p. 5. Debtor has identified no regular income by which she can afford a chapter 13 payment plan. To the contrary, Debtor has failed to timely pay rent for five of the last twelve months, including most recent two months (June and July 2016). These facts raise serious questions about whether Debtor can meet her obligations under a chapter 13 plan. Even an even payment plan over sixty months would require monthly payments of more than $500 a month, an amount that the Debtor does not appear to have.

Debtor's conduct suggests a lack of seriousness toward the bankruptcy process. She has attempted to keep assets from her creditors by misusing the Bankruptcy Code's exemption provisions. She has failed to provide proper notice to parties and other tribunals. And now, just as the Trustee has secured a settlement that pays creditors in full, she seeks to deprive them of their payment and force them to endure possibly years of delay and a significant risk of non-payment. This is an abuse of the bankruptcy process that rivals the conduct condemned by *In re Wampler*.

PAGE 15- STATEMENT OF INTERESTED PARTY
CAL-AM PROPERTIES, INC.

LEGAL131644433.4

Perkins Coie LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Case 15-33254-rld7    Doc 54    Filed 07/15/16

Accordingly, Cal-Am encourages the Court to deny the Conversion Motion, or to postpone it until after the Settlement has been approved and the interests of the creditors have been safeguarded.

**Debtor Has Demonstrated An Inability To Be Successful in Chapter 13**

Although Debtor likely meets the income and debt limitations to be a chapter 13 debtor, in the context of a motion to convert on the eve of nearly fully matured settlement, the Court's inquiry must go further than the threshold chapter 13 standards. Under these circumstances, the Court must determine whether the Debtor can actually meet her plan obligations under chapter 13. *In re Dews*, 243 B.R. 337, 340 (Bankr. S.D. Ohio 1999) ("[I]n the context of an inherently equitable remedy, there may be instances where the requests of debtors should not be honored…. It is this Court's view that it is a waste of the parties' and the court's resources to simply convert cases to Chapter 13 where there is a high likelihood that the plans cannot be confirmed.")

A chapter 7 debtor's inability to meet § 109(e)'s eligibility requirements, which the debtor "must satisfy before conversion to [c]hapter 13," necessitates denial of conversion. *Id*. at 380. As a threshold eligibility matter, "[o]nly an individual with regular income" qualifies for chapter 13. 11 U.S.C. § 109(e); *see also id.* § 101(30) (defining an "individual with regular income" as one "whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13....").

Here, Debtor has presented no evidence of regular income and her conduct demonstrates she would be unlikely to meet the requirements of a confirmable chapter 13 plan. Debtor's current schedules list average income of $1,961.59 and she has been more than one week late (and up to 4 weeks late) to pay rent five of the last twelve months. At a minimum, the Court may need to take further evidence at the hearing to determine Debtor's ability to meet chapter 13 eligibility requirements. Until such time, the available evidence indicates she cannot meet such a burden, and this provides an alternate and independent basis for denial of Conversion Motion.

PAGE 16- STATEMENT OF INTERESTED PARTY
CAL-AM PROPERTIES, INC.

LEGAL131644433.4

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Case 15-33254-rld7    Doc 54    Filed 07/15/16

## CONCLUSION

Debtor asks the Court to reject a Settlement reached by the Trustee that would result in immediate payment in full of all filed claims, with interest, as well as payment of the Trustee's claims, with interest, as well as yield a surplus to Debtor. Instead, Debtor asks the Court to allow her to gamble with those payments based on her hope that she will obtain a positive result in litigating the BOLI Claims - a result that cannot yield the creditors more than they would receive under the proposed Settlement. Creditors have nothing to gain and everything to lose.

It has been over a year since Debtor filed her chapter 7 petition. After having to fight Debtor's improper attempts to use an obviously inapplicable exemption for the BOLI Claims and wrest control of the Litigation from Debtor's unauthorized pursuit of the estate's claims, the Trustee has finally put the estate in a position to settle the claims and pay the estate's debts in full. Debtor seeks to disrupt that result by objecting to the Settlement and moving to convert.

For the reasons set forth above, the Court should approve the Settlement as being fair and reasonable and in the best interests of the estate's creditors and deny Debtor's Conversion Motion.

DATED: July 15, 2016

**PERKINS COIE LLP**

By: /s/ Douglas R. Pahl
    Douglas R. Pahl, OSB No. 950476
    DPahl@perkinscoie.com
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Telephone: 503.727.2000
Facsimile: 503.727.2222

Attorneys for Cal-Am Properties, Inc.

PAGE 17- STATEMENT OF INTERESTED PARTY CAL-AM PROPERTIES, INC.

LEGAL131644433.4

Perkins Coie LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Case 15-33254-rld7    Doc 54    Filed 07/15/16

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date show below the foregoing STATEMENT OF INTERESTED PARTY CAL-AM PROPERTIES, INC. IN SUPPORT OF TRUSTEE'S MOTION AND NOTICE OF INTENT TO SETTLE AND COMPROMISE AND IN OPPOSITION TO DEBTOR'S MOTION TO CONVERT TO CHAPTER 13NOTICE OF STATEMENT OF INTERESTED PARTY CAL-AM PROPERTIES, INC. was electronically filed with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing to all CM/ECF participants, which includes counsel for the Debtor, the Trustee and the United States Trustee's office.

DATED this 15th day of July, 2016

PERKINS COIE LLP

/s/ Douglas R. Pahl
Douglas R. Pahl, OSB No. 950476
DPahl@perkinscoie.com

Attorneys for Cal-Am Properties, Inc.

PAGE 1- CERTIFICATE OF SERVICE

LEGAL131644433.4

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Case 15-33254-rld7    Doc 54    Filed 07/15/16